# EXHIBIT A
## SB 8 Enacted Text

S.B. No. 8

1                              AN ACT

2    relating to abortion, including abortions after detection of an

3    unborn child's heartbeat; authorizing a private civil right of

4    action.

5           BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

6           SECTION 1.  This Act shall be known as the Texas Heartbeat

7    Act.

8           SECTION 2.  The legislature finds that the State of Texas

9    never repealed, either expressly or by implication, the state

10   statutes enacted before the ruling in *Roe v. Wade*, 410 U.S. 113

11   (1973), that prohibit and criminalize abortion unless the mother's

12   life is in danger.

13          SECTION 3.  Chapter 171, Health and Safety Code, is amended

14   by adding Subchapter H to read as follows:

15               SUBCHAPTER H.  DETECTION OF FETAL HEARTBEAT

16          Sec. 171.201.  DEFINITIONS.  In this subchapter:

17               (1)  "Fetal heartbeat" means cardiac activity or the

18   steady and repetitive rhythmic contraction of the fetal heart

19   within the gestational sac.

20               (2)  "Gestational age" means the amount of time that

21   has elapsed from the first day of a woman's last menstrual period.

22               (3)  "Gestational sac" means the structure comprising

23   the extraembryonic membranes that envelop the unborn child and that

24   is typically visible by ultrasound after the fourth week of

S.B. No. 8

1   pregnancy.

2         (4)  "Physician" means an individual licensed to

3   practice medicine in this state, including a medical doctor and a

4   doctor of osteopathic medicine.

5         (5)  "Pregnancy" means the human female reproductive

6   condition that:

7            (A)  begins with fertilization;

8            (B)  occurs when the woman is carrying the

9   developing human offspring; and

10           (C)  is calculated from the first day of the

11   woman's last menstrual period.

12         (6)  "Standard medical practice" means the degree of

13   skill, care, and diligence that an obstetrician of ordinary

14   judgment, learning, and skill would employ in like circumstances.

15         (7)  "Unborn child" means a human fetus or embryo in any

16   stage of gestation from fertilization until birth.

17     Sec. 171.202.  LEGISLATIVE FINDINGS. The legislature finds,

18   according to contemporary medical research, that:

19         (1)  fetal heartbeat has become a key medical predictor

20   that an unborn child will reach live birth;

21         (2)  cardiac activity begins at a biologically

22   identifiable moment in time, normally when the fetal heart is

23   formed in the gestational sac;

24         (3)  Texas has compelling interests from the outset of

25   a woman's pregnancy in protecting the health of the woman and the

26   life of the unborn child; and

27         (4)  to make an informed choice about whether to

S.B. No. 8

1  continue her pregnancy, the pregnant woman has a compelling

2  interest in knowing the likelihood of her unborn child surviving to

3  full-term birth based on the presence of cardiac activity.

4  Sec. 171.203. DETERMINATION OF PRESENCE OF FETAL HEARTBEAT

5  REQUIRED; RECORD. (a) For the purposes of determining the

6  presence of a fetal heartbeat under this section, "standard medical

7  practice" includes employing the appropriate means of detecting the

8  heartbeat based on the estimated gestational age of the unborn

9  child and the condition of the woman and her pregnancy.

10  (b) Except as provided by Section 171.205, a physician may

11  not knowingly perform or induce an abortion on a pregnant woman

12  unless the physician has determined, in accordance with this

13  section, whether the woman's unborn child has a detectable fetal

14  heartbeat.

15  (c) In making a determination under Subsection (b), the

16  physician must use a test that is:

17  (1) consistent with the physician's good faith and

18  reasonable understanding of standard medical practice; and

19  (2) appropriate for the estimated gestational age of

20  the unborn child and the condition of the pregnant woman and her

21  pregnancy.

22  (d) A physician making a determination under Subsection (b)

23  shall record in the pregnant woman's medical record:

24  (1) the estimated gestational age of the unborn child;

25  (2) the method used to estimate the gestational age;

26  and

27  (3) the test used for detecting a fetal heartbeat,

3

S.B. No. 8

1   including the date, time, and results of the test.

2        Sec. 171.204.  PROHIBITED ABORTION OF UNBORN CHILD WITH

3   DETECTABLE FETAL HEARTBEAT; EFFECT.  (a)  Except as provided by

4   Section 171.205, a physician may not knowingly perform or induce an

5   abortion on a pregnant woman if the physician detected a fetal

6   heartbeat for the unborn child as required by Section 171.203 or

7   failed to perform a test to detect a fetal heartbeat.

8        (b)  A physician does not violate this section if the

9   physician performed a test for a fetal heartbeat as required by

10  Section 171.203 and did not detect a fetal heartbeat.

11       (c)  This section does not affect:

12            (1)  the provisions of this chapter that restrict or

13  regulate an abortion by a particular method or during a particular

14  stage of pregnancy; or

15            (2)  any other provision of state law that regulates or

16  prohibits abortion.

17       Sec. 171.205.  EXCEPTION FOR MEDICAL EMERGENCY; RECORDS.

18  (a)  Sections 171.203 and 171.204 do not apply if a physician

19  believes a medical emergency exists that prevents compliance with

20  this subchapter.

21       (b)  A physician who performs or induces an abortion under

22  circumstances described by Subsection (a) shall make written

23  notations in the pregnant woman's medical record of:

24            (1)  the physician's belief that a medical emergency

25  necessitated the abortion; and

26            (2)  the medical condition of the pregnant woman that

27  prevented compliance with this subchapter.

S.B. No. 8

1     (c)  A physician performing or inducing an abortion under
2  this section shall maintain in the physician's practice records a
3  copy of the notations made under Subsection (b).

4     Sec. 171.206.  CONSTRUCTION OF SUBCHAPTER.  (a)  This
5  subchapter does not create or recognize a right to abortion before a
6  fetal heartbeat is detected.

7     (b)  This subchapter may not be construed to:

8         (1)  authorize the initiation of a cause of action
9  against or the prosecution of a woman on whom an abortion is
10  performed or induced or attempted to be performed or induced in
11  violation of this subchapter;

12         (2)  wholly or partly repeal, either expressly or by
13  implication, any other statute that regulates or prohibits
14  abortion, including Chapter 6-1/2, Title 71, Revised Statutes; or

15         (3)  restrict a political subdivision from regulating
16  or prohibiting abortion in a manner that is at least as stringent as
17  the laws of this state.

18     Sec. 171.207.  LIMITATIONS ON PUBLIC ENFORCEMENT.
19  (a)  Notwithstanding Section 171.005 or any other law, the
20  requirements of this subchapter shall be enforced exclusively
21  through the private civil actions described in Section 171.208.  No
22  enforcement of this subchapter, and no enforcement of Chapters 19
23  and 22, Penal Code, in response to violations of this subchapter,
24  may be taken or threatened by this state, a political subdivision, a
25  district or county attorney, or an executive or administrative
26  officer or employee of this state or a political subdivision
27  against any person, except as provided in Section 171.208.

S.B. No. 8

1     (b)  Subsection (a) may not be construed to:

2          (1)  legalize the conduct prohibited by this subchapter

3  or by Chapter 6-1/2, Title 71, Revised Statutes;

4          (2)  limit in any way or affect the availability of a

5  remedy established by Section 171.208; or

6          (3)  limit the enforceability of any other laws that

7  regulate or prohibit abortion.

8     Sec. 171.208.  CIVIL LIABILITY FOR VIOLATION OR AIDING OR

9  ABETTING VIOLATION.  (a)  Any person, other than an officer or

10  employee of a state or local governmental entity in this state, may

11  bring a civil action against any person who:

12          (1)  performs or induces an abortion in violation of

13  this subchapter;

14          (2)  knowingly engages in conduct that aids or abets

15  the performance or inducement of an abortion, including paying for

16  or reimbursing the costs of an abortion through insurance or

17  otherwise, if the abortion is performed or induced in violation of

18  this subchapter, regardless of whether the person knew or should

19  have known that the abortion would be performed or induced in

20  violation of this subchapter; or

21          (3)  intends to engage in the conduct described by

22  Subdivision (1) or (2).

23     (b)  If a claimant prevails in an action brought under this

24  section, the court shall award:

25          (1)  injunctive relief sufficient to prevent the

26  defendant from violating this subchapter or engaging in acts that

27  aid or abet violations of this subchapter;

6

S.B. No. 8

1        (2) statutory damages in an amount of not less than

2 $10,000 for each abortion that the defendant performed or induced

3 in violation of this subchapter, and for each abortion performed or

4 induced in violation of this subchapter that the defendant aided or

5 abetted; and

6        (3) costs and attorney's fees.

7     (c) Notwithstanding Subsection (b), a court may not award

8 relief under this section in response to a violation of Subsection

9 (a)(1) or (2) if the defendant demonstrates that the defendant

10 previously paid the full amount of statutory damages under

11 Subsection (b)(2) in a previous action for that particular abortion

12 performed or induced in violation of this subchapter, or for the

13 particular conduct that aided or abetted an abortion performed or

14 induced in violation of this subchapter.

15     (d) Notwithstanding Chapter 16, Civil Practice and Remedies

16 Code, or any other law, a person may bring an action under this

17 section not later than the fourth anniversary of the date the cause

18 of action accrues.

19     (e) Notwithstanding any other law, the following are not a

20 defense to an action brought under this section:

21        (1) ignorance or mistake of law;

22        (2) a defendant's belief that the requirements of this

23 subchapter are unconstitutional or were unconstitutional;

24        (3) a defendant's reliance on any court decision that

25 has been overruled on appeal or by a subsequent court, even if that

26 court decision had not been overruled when the defendant engaged in

27 conduct that violates this subchapter;

7

S.B. No. 8

1          (4) a defendant's reliance on any state or federal
2  court decision that is not binding on the court in which the action
3  has been brought;

4          (5) non-mutual issue preclusion or non-mutual claim
5  preclusion;

6          (6) the consent of the unborn child's mother to the
7  abortion; or

8          (7) any claim that the enforcement of this subchapter
9  or the imposition of civil liability against the defendant will
10  violate the constitutional rights of third parties, except as
11  provided by Section 171.209.

12      (f)  It is an affirmative defense if:

13          (1) a person sued under Subsection (a)(2) reasonably
14  believed, after conducting a reasonable investigation, that the
15  physician performing or inducing the abortion had complied or would
16  comply with this subchapter; or

17          (2) a person sued under Subsection (a)(3) reasonably
18  believed, after conducting a reasonable investigation, that the
19  physician performing or inducing the abortion will comply with this
20  subchapter.

21      (f-1)  The defendant has the burden of proving an affirmative
22  defense under Subsection (f)(1) or (2) by a preponderance of the
23  evidence.

24      (g)  This section may not be construed to impose liability on
25  any speech or conduct protected by the First Amendment of the United
26  States Constitution, as made applicable to the states through the
27  United States Supreme Court's interpretation of the Fourteenth

8

S.B. No. 8

1  Amendment of the United States Constitution, or by Section 8,
2  Article I, Texas Constitution.
3       (h)  Notwithstanding any other law, this state, a state
4  official, or a district or county attorney may not intervene in an
5  action brought under this section.  This subsection does not
6  prohibit a person described by this subsection from filing an
7  amicus curiae brief in the action.
8       (i)  Notwithstanding any other law, a court may not award
9  costs or attorney's fees under the Texas Rules of Civil Procedure or
10  any other rule adopted by the supreme court under Section 22.004,
11  Government Code, to a defendant in an action brought under this
12  section.
13       (j)  Notwithstanding any other law, a civil action under this
14  section may not be brought by a person who impregnated the abortion
15  patient through an act of rape, sexual assault, incest, or any other
16  act prohibited by Sections 22.011, 22.021, or 25.02, Penal Code.
17       Sec. 171.209.  CIVIL LIABILITY:  UNDUE BURDEN DEFENSE
18  LIMITATIONS.  (a)  A defendant against whom an action is brought
19  under Section 171.208 does not have standing to assert the rights of
20  women seeking an abortion as a defense to liability under that
21  section unless:
22            (1)  the United States Supreme Court holds that the
23  courts of this state must confer standing on that defendant to
24  assert the third-party rights of women seeking an abortion in state
25  court as a matter of federal constitutional law; or
26            (2)  the defendant has standing to assert the rights of
27  women seeking an abortion under the tests for third-party standing

9

S.B. No. 8

1 established by the United States Supreme Court.

2     (b)  A defendant in an action brought under Section 171.208

3 may assert an affirmative defense to liability under this section

4 if:

5         (1)  the defendant has standing to assert the

6 third-party rights of a woman or group of women seeking an abortion

7 in accordance with Subsection (a); and

8         (2)  the defendant demonstrates that the relief sought

9 by the claimant will impose an undue burden on that woman or that

10 group of women seeking an abortion.

11     (c)  A court may not find an undue burden under Subsection

12 (b) unless the defendant introduces evidence proving that:

13         (1)  an award of relief will prevent a woman or a group

14 of women from obtaining an abortion; or

15         (2)  an award of relief will place a substantial

16 obstacle in the path of a woman or a group of women who are seeking

17 an abortion.

18     (d)  A defendant may not establish an undue burden under this

19 section by:

20         (1)  merely demonstrating that an award of relief will

21 prevent women from obtaining support or assistance, financial or

22 otherwise, from others in their effort to obtain an abortion; or

23         (2)  arguing or attempting to demonstrate that an award

24 of relief against other defendants or other potential defendants

25 will impose an undue burden on women seeking an abortion.

26     (e)  The affirmative defense under Subsection (b) is not

27 available if the United States Supreme Court overrules *Roe v. Wade,*

S.B. No. 8

1  410 U.S. 113 (1973) or *Planned Parenthood v. Casey*, 505 U.S. 833

2  (1992), regardless of whether the conduct on which the cause of

3  action is based under Section 171.208 occurred before the Supreme

4  Court overruled either of those decisions.

5  (f) Nothing in this section shall in any way limit or

6  preclude a defendant from asserting the defendant's personal

7  constitutional rights as a defense to liability under Section

8  171.208, and a court may not award relief under Section 171.208 if

9  the conduct for which the defendant has been sued was an exercise of

10 state or federal constitutional rights that personally belong to

11 the defendant.

12 Sec. 171.210. CIVIL LIABILITY: VENUE.

13 (a) Notwithstanding any other law, including Section 15.002,

14 Civil Practice and Remedies Code, a civil action brought under

15 Section 171.208 shall be brought in:

16 (1) the county in which all or a substantial part of

17 the events or omissions giving rise to the claim occurred;

18 (2) the county of residence for any one of the natural

19 person defendants at the time the cause of action accrued;

20 (3) the county of the principal office in this state of

21 any one of the defendants that is not a natural person; or

22 (4) the county of residence for the claimant if the

23 claimant is a natural person residing in this state.

24 (b) If a civil action is brought under Section 171.208 in

25 any one of the venues described by Subsection (a), the action may

26 not be transferred to a different venue without the written consent

27 of all parties.

11

1    Sec. 171.211.  SOVEREIGN,  GOVERNMENTAL,  AND  OFFICIAL

2  IMMUNITY  PRESERVED.   (a)  This  section  prevails  over  any

3  conflicting law, including:

4          (1)  the Uniform Declaratory Judgments Act; and

5          (2)  Chapter 37, Civil Practice and Remedies Code.

6      (b)  This  state  has  sovereign  immunity,  a  political

7  subdivision  has  governmental  immunity,  and  each  officer  and

8  employee  of  this  state  or  a  political  subdivision  has  official

9  immunity in any action, claim, or counterclaim or any type of legal

10  or equitable action that challenges the validity of any provision

11  or  application  of  this  chapter,  on  constitutional  grounds  or

12  otherwise.

13      (c)  A provision of state law may not be construed to waive or

14  abrogate  an  immunity  described  by  Subsection  (b)  unless  it

15  expressly waives immunity under this section.

16      Sec. 171.212.  SEVERABILITY.   (a)  Mindful  of  *Leavitt  v.*

17  *Jane L.*, 518 U.S. 137 (1996), in which in the context of determining

18  the severability of a state statute regulating abortion the United

19  States Supreme Court held that an explicit statement of legislative

20  intent is controlling, it is the intent of the legislature that

21  every provision, section, subsection, sentence, clause, phrase, or

22  word in this chapter, and every application of the provisions in

23  this chapter, are severable from each other.

24      (b)  If any application of any provision in this chapter to

25  any person, group of persons, or circumstances is found by a court

26  to be invalid or unconstitutional, the remaining applications of

27  that provision to all other persons and circumstances shall be

S.B. No. 8

1  severed and may not be affected.  All constitutionally valid

2  applications of this chapter shall be severed from any applications

3  that a court finds to be invalid, leaving the valid applications in

4  force, because it is the legislature's intent and priority that the

5  valid applications be allowed to stand alone.  Even if a reviewing

6  court finds a provision of this chapter to impose an undue burden in

7  a large or substantial fraction of relevant cases, the applications

8  that do not present an undue burden shall be severed from the

9  remaining applications and shall remain in force, and shall be

10  treated as if the legislature had enacted a statute limited to the

11  persons, group of persons, or circumstances for which the statute's

12  application does not present an undue burden.

13      (b-1)  If any court declares or finds a provision of this

14  chapter facially unconstitutional, when discrete applications of

15  that provision can be enforced against a person, group of persons,

16  or circumstances without violating the United States Constitution

17  and Texas Constitution, those applications shall be severed from

18  all remaining applications of the provision, and the provision

19  shall be interpreted as if the legislature had enacted a provision

20  limited to the persons, group of persons, or circumstances for

21  which the provision's application will not violate the United

22  States Constitution and Texas Constitution.

23      (c)  The legislature further declares that it would have

24  enacted this chapter, and each provision, section, subsection,

25  sentence, clause, phrase, or word, and all constitutional

26  applications of this chapter, irrespective of the fact that any

27  provision, section, subsection, sentence, clause, phrase, or word,

S.B. No. 8

1 or applications of this chapter, were to be declared

2 unconstitutional or to represent an undue burden.

3     (d) If any provision of this chapter is found by any court to

4 be unconstitutionally vague, then the applications of that

5 provision that do not present constitutional vagueness problems

6 shall be severed and remain in force.

7     (e) No court may decline to enforce the severability

8 requirements of Subsections (a), (b), (b-1), (c), and (d) on the

9 ground that severance would rewrite the statute or involve the

10 court in legislative or lawmaking activity. A court that declines

11 to enforce or enjoins a state official from enforcing a statutory

12 provision does not rewrite a statute, as the statute continues to

13 contain the same words as before the court's decision. A judicial

14 injunction or declaration of unconstitutionality:

15     (1) is nothing more than an edict prohibiting

16 enforcement that may subsequently be vacated by a later court if

17 that court has a different understanding of the requirements of the

18 Texas Constitution or United States Constitution;

19     (2) is not a formal amendment of the language in a

20 statute; and

21     (3) no more rewrites a statute than a decision by the

22 executive not to enforce a duly enacted statute in a limited and

23 defined set of circumstances.

24     SECTION 4. Chapter 30, Civil Practice and Remedies Code, is

25 amended by adding Section 30.022 to read as follows:

26     Sec. 30.022. AWARD OF ATTORNEY'S FEES IN ACTIONS

27 CHALLENGING ABORTION LAWS. (a) Notwithstanding any other law, any

S.B. No. 8

1   person, including an entity, attorney, or law firm, who seeks
2   declaratory or injunctive relief to prevent this state, a political
3   subdivision, any governmental entity or public official in this
4   state, or any person in this state from enforcing any statute,
5   ordinance, rule, regulation, or any other type of law that
6   regulates or restricts abortion or that limits taxpayer funding for
7   individuals or entities that perform or promote abortions, in any
8   state or federal court, or that represents any litigant seeking
9   such relief in any state or federal court, is jointly and severally
10  liable to pay the costs and attorney's fees of the prevailing party.
11       (b)  For purposes of this section, a party is considered a
12  prevailing party if a state or federal court:
13            (1)  dismisses any claim or cause of action brought
14  against the party that seeks the declaratory or injunctive relief
15  described by Subsection (a), regardless of the reason for the
16  dismissal; or
17            (2)  enters judgment in the party's favor on any such
18  claim or cause of action.
19       (c)  Regardless of whether a prevailing party sought to
20  recover costs or attorney's fees in the underlying action, a
21  prevailing party under this section may bring a civil action to
22  recover costs and attorney's fees against a person, including an
23  entity, attorney, or law firm, that sought declaratory or
24  injunctive relief described by Subsection (a) not later than the
25  third anniversary of the date on which, as applicable:
26            (1)  the dismissal or judgment described by Subsection
27  (b) becomes final on the conclusion of appellate review; or

15

S.B. No. 8

1      (2)  the time for seeking appellate review expires.

2      (d)  It is not a defense to an action brought under

3 Subsection (c) that:

4      (1)  a prevailing party under this section failed to

5 seek recovery of costs or attorney's fees in the underlying action;

6      (2)  the court in the underlying action declined to

7 recognize or enforce the requirements of this section; or

8      (3)  the court in the underlying action held that any

9 provisions of this section are invalid, unconstitutional, or

10 preempted by federal law, notwithstanding the doctrines of issue or

11 claim preclusion.

12     SECTION 5.  Subchapter C, Chapter 311, Government Code, is

13 amended by adding Section 311.036 to read as follows:

14     Sec. 311.036.  CONSTRUCTION OF ABORTION STATUTES.  (a)  A

15 statute that regulates or prohibits abortion may not be construed

16 to repeal any other statute that regulates or prohibits abortion,

17 either wholly or partly, unless the repealing statute explicitly

18 states that it is repealing the other statute.

19     (b)  A statute may not be construed to restrict a political

20 subdivision from regulating or prohibiting abortion in a manner

21 that is at least as stringent as the laws of this state unless the

22 statute explicitly states that political subdivisions are

23 prohibited from regulating or prohibiting abortion in the manner

24 described by the statute.

25     (c)  Every statute that regulates or prohibits abortion is

26 severable in each of its applications to every person and

27 circumstance.  If any statute that regulates or prohibits abortion

S.B. No. 8

is found by any court to be unconstitutional, either on its face or as applied, then all applications of that statute that do not violate the United States Constitution and Texas Constitution shall be severed from the unconstitutional applications and shall remain enforceable, notwithstanding any other law, and the statute shall be interpreted as if containing language limiting the statute's application to the persons, group of persons, or circumstances for which the statute's application will not violate the United States Constitution and Texas Constitution.

SECTION 6.  Section 171.005, Health and Safety Code, is amended to read as follows:

Sec. 171.005.  COMMISSION  [DEPARTMENT]  TO  ENFORCE; EXCEPTION.  The commission [department] shall enforce this chapter except for Subchapter H, which shall be enforced exclusively through the private civil enforcement actions described by Section 171.208 and may not be enforced by the commission.

SECTION 7.  Subchapter A, Chapter 171, Health and Safety Code, is amended by adding Section 171.008 to read as follows:

Sec. 171.008.  REQUIRED DOCUMENTATION.  (a)  If an abortion is performed or induced on a pregnant woman because of a medical emergency, the physician who performs or induces the abortion shall execute a written document that certifies the abortion is necessary due to a medical emergency and specifies the woman's medical condition requiring the abortion.

(b)  A physician shall:

(1)  place the document described by Subsection (a) in the pregnant woman's medical record; and

17

S.B. No. 8

1    (2) maintain a copy of the document described by

2 Subsection (a) in the physician's practice records.

3   (c) A physician who performs or induces an abortion on a

4 pregnant woman shall:

5    (1) if the abortion is performed or induced to

6 preserve the health of the pregnant woman, execute a written

7 document that:

8     (A) specifies the medical condition the abortion

9 is asserted to address; and

10     (B) provides the medical rationale for the

11 physician's conclusion that the abortion is necessary to address

12 the medical condition; or

13    (2) for an abortion other than an abortion described

14 by Subdivision (1), specify in a written document that maternal

15 health is not a purpose of the abortion.

16   (d) The physician shall maintain a copy of a document

17 described by Subsection (c) in the physician's practice records.

18   SECTION 8. Section 171.012(a), Health and Safety Code, is

19 amended to read as follows:

20   (a) Consent to an abortion is voluntary and informed only

21 if:

22    (1) the physician who is to perform or induce the

23 abortion informs the pregnant woman on whom the abortion is to be

24 performed or induced of:

25     (A) the physician's name;

26     (B) the particular medical risks associated with

27 the particular abortion procedure to be employed, including, when

18

S.B. No. 8

1  medically accurate:

2                              (i)  the risks of infection and hemorrhage;

3                              (ii)  the potential danger to a subsequent

4  pregnancy and of infertility; and

5                              (iii)  the possibility of increased risk of

6  breast cancer following an induced abortion and the natural

7  protective effect of a completed pregnancy in avoiding breast

8  cancer;

9                       (C)  the probable gestational age of the unborn

10  child at the time the abortion is to be performed or induced; and

11                       (D)  the medical risks associated with carrying

12  the child to term;

13               (2)  the physician who is to perform or induce the

14  abortion or the physician's agent informs the pregnant woman that:

15                       (A)  medical assistance benefits may be available

16  for prenatal care, childbirth, and neonatal care;

17                       (B)  the father is liable for assistance in the

18  support of the child without regard to whether the father has

19  offered to pay for the abortion; and

20                       (C)  public and private agencies provide

21  pregnancy prevention counseling and medical referrals for

22  obtaining pregnancy prevention medications or devices, including

23  emergency contraception for victims of rape or incest;

24               (3)  the physician who is to perform or induce the

25  abortion or the physician's agent:

26                       (A)  provides the pregnant woman with the printed

27  materials described by Section 171.014; and

19

S.B. No. 8

1              (B)  informs  the  pregnant  woman  that  those

2  materials:

3                   (i)  have  been  provided  by  the  <u>commission</u>

4  [~~Department of State Health Services~~];

5                   (ii)  are  accessible  on  an  Internet  website

6  sponsored  by  the  <u>commission</u>  [~~department~~];

7                   (iii)  describe  the  unborn  child  and  list

8  agencies that offer alternatives to abortion; and

9                   (iv)  include a list of agencies that offer

10  sonogram services at no cost to the pregnant woman;

11           (4)  before any sedative or anesthesia is administered

12  to the pregnant woman and at least 24 hours before the abortion or

13  at least two hours before the abortion if the pregnant woman waives

14  this requirement by certifying that she currently lives 100 miles

15  or  more  from  the  nearest  abortion  provider  that  is  a  facility

16  licensed under Chapter 245 or a facility that performs more than 50

17  abortions in any 12-month period:

18                   (A)  the physician who is to perform <u>or induce</u> the

19  abortion  or  an  agent  of  the  physician  who  is  also  a  sonographer

20  certified by a national registry of medical sonographers performs a

21  sonogram  on  the  pregnant  woman  on  whom  the  abortion  is  to  be

22  performed <u>or induced</u>;

23                   (B)  the physician who is to perform <u>or induce</u> the

24  abortion displays the sonogram images in a quality consistent with

25  current  medical  practice  in  a  manner  that  the  pregnant  woman  may

26  view them;

27                   (C)  the physician who is to perform <u>or induce</u> the

S.B. No. 8

1   abortion provides, in a manner understandable to a layperson, a

2   verbal explanation of the results of the sonogram images, including

3   a medical description of the dimensions of the embryo or fetus, the

4   presence of cardiac activity, and the presence of external members

5   and internal organs; and

6           (D)  the physician who is to perform or induce the

7   abortion or an agent of the physician who is also a sonographer

8   certified by a national registry of medical sonographers makes

9   audible the heart auscultation for the pregnant woman to hear, if

10  present, in a quality consistent with current medical practice and

11  provides, in a manner understandable to a layperson, a simultaneous

12  verbal explanation of the heart auscultation;

13          (5)  before receiving a sonogram under Subdivision

14  (4)(A) and before the abortion is performed or induced and before

15  any sedative or anesthesia is administered, the pregnant woman

16  completes and certifies with her signature an election form that

17  states as follows:

18              "ABORTION AND SONOGRAM ELECTION

19          (1)  THE INFORMATION AND PRINTED MATERIALS DESCRIBED BY

20  SECTIONS 171.012(a)(1)-(3), TEXAS HEALTH AND SAFETY CODE, HAVE BEEN

21  PROVIDED AND EXPLAINED TO ME.

22          (2)  I UNDERSTAND THE NATURE AND CONSEQUENCES OF AN

23  ABORTION.

24          (3)  TEXAS LAW REQUIRES THAT I RECEIVE A SONOGRAM PRIOR

25  TO RECEIVING AN ABORTION.

26          (4)  I UNDERSTAND THAT I HAVE THE OPTION TO VIEW THE

27  SONOGRAM IMAGES.

21

S.B. No. 8

1          (5)  I UNDERSTAND THAT I HAVE THE OPTION TO HEAR THE

2 HEARTBEAT.

3          (6)  I UNDERSTAND THAT I AM REQUIRED BY LAW TO HEAR AN

4 EXPLANATION OF THE SONOGRAM IMAGES UNLESS I CERTIFY IN WRITING TO

5 ONE OF THE FOLLOWING:

6          ____ I AM PREGNANT AS A RESULT OF A SEXUAL ASSAULT,

7 INCEST, OR OTHER VIOLATION OF THE TEXAS PENAL CODE THAT HAS BEEN

8 REPORTED TO LAW ENFORCEMENT AUTHORITIES OR THAT HAS NOT BEEN

9 REPORTED BECAUSE I REASONABLY BELIEVE THAT DOING SO WOULD PUT ME AT

10 RISK OF RETALIATION RESULTING IN SERIOUS BODILY INJURY.

11          ____ I AM A MINOR AND OBTAINING AN ABORTION IN ACCORDANCE

12 WITH JUDICIAL BYPASS PROCEDURES UNDER CHAPTER 33, TEXAS FAMILY

13 CODE.

14          ____ MY UNBORN CHILD [FETUS] HAS AN IRREVERSIBLE MEDICAL

15 CONDITION OR ABNORMALITY, AS IDENTIFIED BY RELIABLE DIAGNOSTIC

16 PROCEDURES AND DOCUMENTED IN MY MEDICAL FILE.

17          (7)  I AM MAKING THIS ELECTION OF MY OWN FREE WILL AND

18 WITHOUT COERCION.

19          (8)  FOR A WOMAN WHO LIVES 100 MILES OR MORE FROM THE

20 NEAREST ABORTION PROVIDER THAT IS A FACILITY LICENSED UNDER CHAPTER

21 245, TEXAS HEALTH AND SAFETY CODE, OR A FACILITY THAT PERFORMS MORE

22 THAN 50 ABORTIONS IN ANY 12-MONTH PERIOD ONLY:

23          I CERTIFY THAT, BECAUSE I CURRENTLY LIVE 100 MILES OR

24 MORE FROM THE NEAREST ABORTION PROVIDER THAT IS A FACILITY LICENSED

25 UNDER CHAPTER 245 OR A FACILITY THAT PERFORMS MORE THAN 50 ABORTIONS

26 IN ANY 12-MONTH PERIOD, I WAIVE THE REQUIREMENT TO WAIT 24 HOURS

27 AFTER THE SONOGRAM IS PERFORMED BEFORE RECEIVING THE ABORTION

S.B. No. 8

1 PROCEDURE. MY PLACE OF RESIDENCE IS:_____.

2 _____        _____

3 SIGNATURE                   DATE";

4    (6) before the abortion is performed <u>or induced</u>, the

5 physician who is to perform <u>or induce</u> the abortion receives a copy

6 of the signed, written certification required by Subdivision (5);

7 and

8    (7) the pregnant woman is provided the name of each

9 person who provides or explains the information required under this

10 subsection.

11   SECTION 9. Section 245.011(c), Health and Safety Code, is

12 amended to read as follows:

13  (c) The report must include:

14    (1) whether the abortion facility at which the

15 abortion is performed is licensed under this chapter;

16    (2) the patient's year of birth, race, marital status,

17 and state and county of residence;

18    (3) the type of abortion procedure;

19    (4) the date the abortion was performed;

20    (5) whether the patient survived the abortion, and if

21 the patient did not survive, the cause of death;

22    (6) the probable post-fertilization age of the unborn

23 child based on the best medical judgment of the attending physician

24 at the time of the procedure;

25    (7) the date, if known, of the patient's last menstrual

26 cycle;

27    (8) the number of previous live births of the patient;

23

S.B. No. 8

1   [and]

2         (9) the number of previous induced abortions of the

3 patient;

4         (10) whether the abortion was performed or induced

5 because of a medical emergency and any medical condition of the

6 pregnant woman that required the abortion; and

7         (11) the information required under Sections

8 171.008(a) and (c).

9     SECTION 10. Every provision in this Act and every

10 application of the provision in this Act are severable from each

11 other. If any provision or application of any provision in this Act

12 to any person, group of persons, or circumstance is held by a court

13 to be invalid, the invalidity does not affect the other provisions

14 or applications of this Act.

15     SECTION 11. The change in law made by this Act applies only

16 to an abortion performed or induced on or after the effective date

17 of this Act.

18     SECTION 12. This Act takes effect September 1, 2021.

S.B. No. 8

_____          _____
       President of the Senate                    Speaker of the House

    I hereby certify that S.B. No. 8 passed the Senate on March 30, 2021, by the following vote:  Yeas 19, Nays 12; and that the Senate concurred in House amendments on May 13, 2021, by the following vote: Yeas 18, Nays 12.

 

                                         _____
                                                  Secretary of the Senate

    I hereby certify that S.B. No. 8 passed the House, with amendments, on May 6, 2021, by the following vote:  Yeas 83, Nays 64, one present not voting.

 

                                         _____
                                                  Chief Clerk of the House

Approved:

_____
              Date

_____
           Governor