# EXHIBIT F
Feb. 23, 2022
Texas Tribune Article

  

MENU

Transgender Health Care     Election Results     Far-Right Conservatives     Progressive Democrats     Coronavirus Tra

# Anti-abortion lawyers target those funding the procedure for potential lawsuits under new Texas law

> Attorneys who helped design Texas' novel abortion ban have asked a judge to allow them to depose the leaders of two abortion funds, seeking information about anyone who may have "aided or abetted" in a prohibited procedure.

BY **ELEANOR KLIBANOFF**     FEB. 23, 2022     2 PM CENTRAL

COPY LINK



A patient waits to see a doctor prior to her abortion at Trust Women clinic in Oklahoma City on Dec. 6, 2021. REUTERS/Evelyn Hockstein

*Sign up for The Brief, our daily newsletter that keeps readers up to speed on the most essential Texas news.*

For nearly six months, as Texas' novel abortion law has wended its way through the courts, abortion providers and opponents have been locked in a stalemate.

The law, known as Senate Bill 8, empowers private citizens to sue anyone who "aids or abets" an abortion after about six weeks of pregnancy. With one exception as soon as the law went into effect, abortion providers in Texas have stopped performing these prohibited procedures — so opponents haven't tried to bring one of these enforcement suits.

But that could be changing. A group of anti-abortion lawyers have taken steps to potentially bring lawsuits under SB 8, claiming in state court petitions that the leaders of two abortion funds have information about illegal abortions they helped patients procure.

The Texas Tribune thanks its sponsors. Become one.

This is a significant escalation on the part of abortion opponents, who have so far seemed satisfied with the chilling effect that even just the threat of lawsuits has had on abortion providers and their affiliates.

The petitions were filed by two women, Ashley Maxwell of Hood County and Sadie Weldon of Jack County. They are represented by Jonathan Mitchell, the architect of SB 8 and a former solicitor general for Texas; state Sen. Bryan Hughes (R-Mineola), the law's chief legislative advocate; and lawyers from the right-wing Thomas More Society and America First Legal Foundation.

Maxwell and Weldon are asking a judge to allow them to depose the executive director of the Texas Equal Access Fund and the deputy director of the Lilith Fund before any lawsuits are filed.

If granted, the depositions will allow the petitioners to discover "the extent of involvement of each individual that aided or abetted post-heartbeat abortions in violation of SB 8" so they can "better evaluate the prospects for legal success."

While abortion providers have reported significant declines in patient loads since the law went into effect, abortion funds have seen a surge in demand from clients trying to access abortions before the deadline or leave the state to seek the procedure.

"What [these petitions] mean to do is chill pregnant people from seeking out the help of abortion funds," said Elizabeth Sepper, a law professor at the University of Texas at Austin. "If someone thinks that their identity and circumstances are going to be revealed to the world at large by a lawsuit … they're going to hesitate before they pick up the phone and call for help."

**"Aided and abetted"**

The petitions seek to depose Kamyon Conner, executive director of the Texas Equal Access Fund, and Neesha Davé, deputy director of the Lilith Fund for Reproductive Equity, two nonprofit abortion funds that provide financial assistance to patients seeking abortions.

Conner and Davé both admitted, in sworn affidavits in state court, that their organizations helped fund abortions "after the period in which cardiac activity is usually detectable." That would put them in violation of SB 8, also known as the Texas Heartbeat Act, and open them up to potential lawsuits.

The Texas Tribune thanks its sponsors. Become one.

The organizations helped fund these abortions during a brief period last fall in which a federal district judge had enjoined the law from being enforced. A higher court quickly overturned that ruling; SB 8 specifically notes that an injunction that is later overturned is not a protection from future lawsuits.

That aspect of the law hasn't been tested in court, and experts say it's unclear whether it would hold up.

"In part, this attempt to get a deposition is also an attempt to figure out if claims can be brought based on the abortions performed in those few days where SB 8 was not in effect," said Sepper.

The depositions are also seeking to identify who, in the language of the law, "aided and abetted" in these abortions — and the petitions indicate they're taking a very wide view of that term. According to the filing, they're seeking information on the funds' role in facilitating abortions, the identity of individuals that they collaborated with and access to documents on the funds' sources of financial support.

The Texas Tribune thanks its sponsors. Become one.

In a statement, Thomas More Society President Tom Brejcha said the two named abortions funds have "exposed their employees, volunteers and donors to civil lawsuits and potential criminal prosecution."

"Those who are funding or assisting in bringing about these abortions will be revealed in discovery," Brejcha said. "Anyone who has aided or abetted an illegal abortion in Texas is subject to the full force of the law and imposition of these civil and criminal sanctions."

In response to a fundraising callout by the Lilith Fund, the Thomas More Society tweeted a warning, "@lilithfund donors could get sued under SB 8," and linked to the press release about the petitions.

### Is this a standalone case?

Lawyers for the abortion funds and lawyers for the petitioners disagree on how — and where — these deposition requests should proceed. The conflict centers on



the ongoing "multidistrict litigation," where 14 challenges to the law in state court were combined into one courtroom in Austin.

The Texas Tribune thanks its sponsors. Become one.

These cases specifically targeted the anti-abortion group Texas Right to Life and its legislative director, John Seago, and were heard by retired state magistrate judge David Peeples. It was as part of this multidistrict litigation that Conner and Davé filed these sworn affidavits, admitting to potential violations of SB8.

In December, Peeples ruled that SB8 was unconstitutional, though he didn't enjoin it from being enforced. Texas Right to Life has appealed that decision, and all other actions in the case are halted while that appeal proceeds.

The central question is whether these petitions seeking to depose Conner and Davé are related to that case and should be added to the multidistrict litigation. If they are, they too would be stayed from moving forward by the ongoing appeal, and the depositions wouldn't happen anytime soon.

Jennifer Ecklund and Elizabeth Myers, who are representing the abortion funds, consider these new petitions to be "tag-along" cases —the actual legal term — and have moved them into the multidistrict litigation.

The Texas Tribune thanks its sponsors. Become one.

Mitchell, representing both Texas Right to Life and the women who filed the petitions, has filed a motion arguing that these petitions are not related to the ongoing litigation and should be sent back to Jack and Denton counties, where the cases are filed.

Seago, with Texas Right to Life, said that he was not consulted by Mitchell or anyone else before these petitions were filed and has no part in this effort. Mitchell declined to comment; Hughes did not respond to requests for comment.

The next step would be for Peeples to hold a hearing and decide whether or not the cases are related. Lawyers for the abortion funds argue that the stay in the multidistrict case blocks Peeples from even taking that step, a stance that will likely be challenged by the lawyers for the petitioners.

*Disclosure: University of Texas at Austin has been a financial supporter of The Texas Tribune, a nonprofit, nonpartisan news organization that is funded in part by donations from members, foundations and corporate sponsors. Financial supporters play no role in the Tribune's journalism. Find a complete list of them here.*

The Texas Tribune thanks its sponsors. Become one.

## Quality journalism doesn't come free

Perhaps it goes without saying — but producing quality journalism isn't cheap. At a time when newsroom resources and revenue across the country are declining, The Texas Tribune remains committed to sustaining our mission: creating a more engaged and informed Texas with every story we cover, every event we convene and every newsletter we send. As a nonprofit

newsroom, we rely on members to help keep our stories free and our events open to the public. Do you value our journalism? Show us with your support.

**YES, I'LL DONATE TODAY**

The Texas Tribune thanks its sponsors. Become one.



Donate

Contact Us

Advertise

© 2022 The Texas Tribune

**SOCIAL MEDIA**

Facebook

Twitter

YouTube

Instagram

LinkedIn

Reddit

**INFO**

About Us

Our Staff

Jobs

Who Funds Us?

Strategic Plan

Republishing Guidelines

Code of Ethics

Terms of Service

Privacy Policy

Send us a confidential tip

Corrections

Feeds

Newsletters

Audio

Video

Join our Facebook Group, This Is Your Texas.