UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE NORTH TEXAS EQUAL ACCESS FUND, LILITH FUND FOR REPRODUCTIVE EQUITY, <br><br> Plaintiffs, <br><br> v. <br><br> THOMAS MORE SOCIETY, <br><br> Defendant. | Case No. 22-cv-01399 <br><br> Judge Martha M. Pacold |

**MEMORANDUM OPINION AND ORDER**

    Plaintiffs, The North Texas Equal Access Fund and the Lilith Fund for Reproductive Equity, are abortion funds headquartered in Texas. They brought this suit seeking declaratory and injunctive relief against defendant, the Thomas More Society, who, they allege, has threatened to enforce the Texas Heartbeat Act, Senate Bill 8, 87th Leg., Reg. Sess., also known as "SB8." The Thomas More Society has moved to dismiss, arguing that plaintiffs do not satisfy Article III's justiciability requirements. The motion to dismiss [23] is granted for lack of jurisdiction. If plaintiffs believe they can amend their complaint in compliance with this order and Federal Rule of Civil Procedure 11, they may file an amended complaint by April 30, 2024.

**I**

    The Texas Legislature passed SB8 in May of 2021. [1] ¶ 2.[1] Under SB8, a physician may not knowingly perform or induce an abortion on a pregnant woman if the physician has detected a fetal heartbeat (or failed to test for a fetal heartbeat), unless the physician believes a medical emergency exists that prevents compliance. Tex. Health & Safety Code Ann. §§ 171.203, 171.204(a), 171.205(a). SB8 explicitly prohibits state officials from bringing civil or criminal enforcement actions. *Id.* § 171.207(a); *see also Whole Woman's Health v. Jackson*, 642 S.W.3d 569, 583 (Tex. 2022) ("Texas law does not grant the state-agency executives named as defendants in this case any authority to enforce [SB8's] requirements, either directly or

---

[1] Bracketed numbers refer to docket entries and are followed by the page or paragraph number. Page numbers refer to the CM/ECF page number.

indirectly."). Rather, SB8's private civil-enforcement provision permits any person other than a state or local government official to bring a civil action against any person who: (1) performs or induces an abortion after detection of a fetal heartbeat (or without determining "whether the woman's unborn child has a detectable fetal heartbeat," Tex. Health & Safety Code Ann. § 171.203(b)); (2) knowingly engages in conduct that aids or abets the performance or inducement of such an abortion, including paying for or reimbursing the costs of the abortion; or (3) intends to engage in any of the foregoing conduct. *Id.* § 171.208(a)(1)–(3). A claimant who prevails in an action under SB8 is entitled to injunctive relief to prevent a defendant from violating the law; statutory damages of no less than $10,000 for each abortion the defendant performed, induced, or aided and abetted in performing or inducing; and costs and attorney's fees. *Id.* § 171.208(b)(1)–(3). The statute permits defendants to assert as a legal defense that this liability would place an "undue burden" on women seeking abortions. *Id.* § 171.209(b)(2).[2]

Plaintiffs "are abortion funds headquartered and operating in Texas." [1] ¶ 1. They "provide financial, emotional, and logistical support for abortion patients all over Texas. Their support includes work helping pregnant Texans access care within the state and accessing abortion services outside of Texas when needed." *Id.*

The Thomas More Society "is a 501(c)(3) public non-profit corporation formed under the laws of the State of Illinois with its principal place of business and headquarters in Chicago, Illinois." *Id.* ¶ 11; [36] ¶ 11. Plaintiffs allege that the Thomas More Society has publicly declared its intention to sue them and to assist others in suing them under SB8's private civil enforcement provision. [1] ¶ 4.

On January 26, 2022, Sadie Weldon filed a petition in Texas state court pursuant to Texas Rule of Civil Procedure 202. *Id.* ¶ 25. In relevant part, that rule states:

> A person may petition the court for an order authorizing the taking of a deposition on oral examination or written questions either:
>
> > (a) to perpetuate or obtain the person's own testimony or that of any other person for use in an anticipated suit; or
> >
> > (b) to investigate a potential claim or suit.

Tex. R. Civ. P. 202.1. The Weldon petition sought a pre-suit investigatory deposition of Neesha Davé, the Lilith Fund's Deputy Director and former Acting Executive Director. [1] ¶ 25. Another individual, Ashley Maxwell, filed a Rule 202

---

[2] The Supreme Court issued *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), after this case was filed. Neither party has indicated to the court that *Dobbs* affects any issue in this case.

petition in Texas state court on February 2, 2022, seeking a pre-suit deposition of Kamyon Conner, the Equal Access Fund's Executive Director. *Id.*

Plaintiffs state that each Rule 202 petition was based on Davé and Conner's testimony from the Texas Heartbeat Act Multi-District Litigation in Texas state court. *Id.* ¶ 29. In their testimony, Davé and Conner admitted that the Lilith Fund and the Equal Access Fund helped fund at least one post-cardiac-activity abortion after a Texas state court judge enjoined SB8's enforcement. *Id.*

Some of the attorneys representing Weldon and Maxwell for their Rule 202 petitions were affiliated with the Thomas More Society. *Id.* ¶ 25. Attorneys Thomas Brejcha and Martin Whittaker signed the petitions. [1-2] at 11; [1-3] at 11. Thomas Brejcha is the Thomas More Society's President, Founder, and Chief Counsel. [1] ¶ 31. The parties do not explain Martin Whittaker's role in the Thomas More Society.

Plaintiffs also allege that the Thomas More Society "publicly threatened litigation after filing these 202 Petitions." *Id.* ¶ 32. In support of this allegation, plaintiffs provide screenshots of two tweets from the Thomas More Society's Twitter account. The first tweet, dated February 21, 2022, states that Lilith Fund "donors could get sued under SB 8." *Id.*; [1-4]. The second tweet, posted two days later, states: "Those who are funding or assisting in bringing about these abortions will be revealed in discovery. Anyone who has aided or abetted an illegal abortion in Texas is subject to the full force of the law and imposition of these civil and criminal sanctions." [1] ¶ 33; [1-4].

Plaintiffs further allege that the Thomas More Society "issued several public statements explicitly stating that the intent of the Rule 202 petition is to target individuals and entities providing financial support to those seeking or who have received abortions." [1] ¶ 35. Specifically, plaintiffs point to the following statements from the Thomas More Society or those affiliated with the Thomas More Society:

- A press release from the Thomas More Society on February 21, 2022 stated, in reference to the Rule 202 petitions: "These depositions will uncover the individuals subject to civil liability and criminal prosecution for aiding or abetting these illegal abortions, which will include each fund's employees, volunteers, and donors whose gifts are targeted or used for these illegal purposes." [1-5] at 2.

- The same press release from the Thomas More Society, in which Brejcha states:

3

> It is illegal to pay for an abortion performed in Texas or to contribute to abortion funds to aid or abet these abortions . . . . The Lilith Fund and the Texas Equal Access Fund have admitted to paying for abortions in violation of the Texas Heartbeat Act, and in doing so they have exposed their employees, volunteers, and donors to civil lawsuits and potential criminal prosecution. Those donations were used not for First Amendment advocacy but to end the lives of innocent unborn human beings with beating hearts. Those who are funding or assisting in bringing about these abortions will be revealed in discovery. Anyone who has aided or abetted an illegal abortion in Texas is subject to the full force of the law and imposition of these civil and criminal sanctions.

*Id.* at 3 (quotation marks omitted).

- A Texas Tribune article from February 23, 2022, in which Brejcha stated that plaintiffs have "exposed their employees, volunteers and donors to civil lawsuits and potential criminal prosecution." [1-6] at 5. In the same article, Brejcha states: "Those who are funding or assisting in bringing about these abortions will be revealed in discovery" and "[a]nyone who has aided or abetted an illegal abortion in Texas is subject to the full force of the law and imposition of these civil and criminal sanctions." *Id.*

Plaintiffs invoke the Declaratory Judgment Act and ask that this court: (1) declare that SB8's private civil enforcement mechanism is unconstitutional; (2) issue a preliminary injunction preventing the Thomas More Society from "filing any case against Plaintiffs under SB8, conspiring, coordinating, or assisting others with filing such a case, or seeking discovery related to such a case"; and (3) issue a permanent injunction restraining the Thomas More Society and those working with the Thomas More Society in the same manner as a preliminary injunction. [1] ¶¶ 6, 50–57. Plaintiffs claim that SB8 and the Thomas More Society's alleged threats of enforcement violate plaintiffs' Fourteenth Amendment Due Process rights, Equal Protection rights, and First Amendment Free Speech rights. *Id.* ¶¶ 65–105. They also claim that SB8 is unconstitutional because it confers standing in an unconstitutional manner and that SB8's provisions are preempted by federal law. *Id.* ¶¶ 106–120.

The Thomas More Society moved to dismiss for lack of subject matter jurisdiction. [23]. It also filed an answer generally denying the allegations in the complaint. [36].

4

## II

"The 'first and fundamental question' [a] court must answer 'is that of jurisdiction.'" *Kithongo v. Garland*, 33 F.4th 451, 454 (7th Cir. 2022) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). The United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "[S]tanding is an essential and unchanging part of [this] case-or-controversy requirement." *Lujan*, 504 U.S. at 560. Under this doctrine, a plaintiff must allege: (1) an injury in fact; (2) that is fairly traceable to the challenged actions of the defendant and not the result of independent actions of third parties; and (3) that is likely to be redressed by a favorable decision. *Id.* at 560–61. "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561.

### A

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for lack of subject matter jurisdiction. An attack on the court's subject matter jurisdiction can take two forms—a facial or factual attack. *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020). "A facial attack tests whether the allegations, taken as true, support an inference that the elements of standing exist." *Id.* A factual attack, by contrast, challenges "the existence of jurisdictional facts underlying the allegations." *Id.* "[A] plaintiff undergoing only a facial attack enjoys treatment of her allegations as true, but that benefit does not carry into the context of a factual challenge." *Id.* Accordingly, in a factual attack, "the court may consider and weigh evidence outside the pleadings to determine whether it has power to adjudicate the action." *Id.*; *see also Reid L. v. Ill. State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004) (a district court may "find the facts" when "standing is challenged as a factual matter"). If the material factual allegations are contested, the party invoking federal jurisdiction bears the burden of proving jurisdictional facts by a preponderance of the evidence. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

Here, the Thomas More Society makes a factual attack on the court's subject matter jurisdiction. It argues that the case should be dismissed because plaintiffs' alleged injuries are not fairly traceable to the Thomas More Society's conduct or likely to be redressed by a favorable decision. Specifically, the Thomas More Society asserts that it has never intended to pursue SB8 litigation against plaintiffs. It further argues that this case is moot because Weldon and Maxwell terminated the Thomas More Society's representation in their Rule 202 proceedings, and the Thomas More Society does not represent or intend to represent anyone pursuing SB8 litigation against plaintiffs. In response, plaintiffs question the Thomas More Society's characterization of its intent and the relevance of the sworn declarations attached to the motion to dismiss. Because the Thomas More Society's arguments

test "the existence of jurisdictional facts underlying the allegations," its jurisdictional attack is best classified as factual, and the court may weigh evidence and find facts as appropriate. *Bazile*, 983 F.3d at 279.[3]

Turning to the elements of standing, the parties do not dispute that plaintiffs have satisfied Article III's injury-in-fact requirement. Plaintiffs allege that, by aiding and abetting abortions, they have engaged in conduct that exposes them to civil liability under SB8 and have expended resources responding to the Rule 202 petitions filed in Texas state court. The court agrees, for the reasons stated in the parties' briefs, that these constitute cognizable Article III injuries.

The parties, however, dispute whether plaintiffs have met their burden for the other two standing elements—traceability and redressability. As for traceability, the Thomas More Society contends that plaintiffs' injuries are not fairly traceable to its allegedly unlawful conduct because the Thomas More Society does not and has never had the intention of suing plaintiffs for violating SB8. Rather, Weldon and Maxwell undertook the Rule 202 proceedings on their own initiatives. *N. Texas Equal Access Fund v. Am. First Legal Found.*, No. CV 22-0728 (ABJ), 2023 WL 7002675 (D.D.C. Oct. 24, 2023), granted a similar motion to dismiss due to lack of traceability. The court agrees that plaintiffs have not shown traceability, as discussed in that opinion. In addition, regardless of traceability, plaintiffs cannot show that their injuries would be redressed by the requested relief.

**B**

Redressability requires plaintiffs to show that it is "likely that a favorable judicial decision will prevent or redress" their alleged injuries. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). "To determine whether an injury is redressable, a court will consider the relationship between 'the judicial relief requested' and the 'injury' suffered." *California v. Texas*, 141 S. Ct. 2104, 2115 (2021) (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)). As the Supreme Court has explained, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976)).

Plaintiffs claim that they are injured because their conduct exposes them to civil liability under SB8. To remedy this injury, plaintiffs seek injunctive relief and a declaratory judgment. The court must therefore consider whether plaintiffs'

---

[3] Plaintiffs' response brief states that the Thomas More Society "appears to argue both a facial and a factual standing challenge." [28] at 10. The Thomas More Society's brief does not address this issue. However, because the parties primarily dispute the jurisdictional facts underlying this litigation and because the Thomas More Society's motion primarily relies on affidavits outside the pleadings to test those jurisdictional facts, the court does not consider any of the Thomas More Society's attacks on jurisdiction facial in nature.

requested relief—a declaration that SB8 is unconstitutional and an injunction prohibiting the Thomas More Society from enforcing SB8 or representing parties seeking to enforce SB8—is likely to redress plaintiffs' exposure to civil liability.

An injunction will not redress plaintiffs' injuries, i.e., exposure under SB8 to civil liability for aiding and abetting abortions. According to plaintiffs, an injunction against the Thomas More Society will ensure that the Thomas More Society cannot enforce, threaten to enforce, or assist in enforcing SB8 against them. But plaintiffs' exposure to civil liability will persist regardless of any injunctive relief against the Thomas More Society. Even with an injunction prohibiting the Thomas More Society from enforcing SB8, plaintiffs may still face civil liability from parties that are not before this court and that this court cannot enjoin. *Cf. Simon*, 426 U.S. at 41–43.

In fact, plaintiffs may even still face civil liability from Weldon and Maxwell. Both Weldon and Maxwell swear in their declarations that they will continue their Rule 202 proceedings against plaintiffs regardless of whether this court issues an injunction against the Thomas More Society. *See* [23-6] ¶ 11; [23-7] ¶ 11. And although the complaint contains numerous allegations suggesting that the Thomas More Society has served or intends to serve as a plaintiff to enforce SB8 in Texas state court, *see* [1] at ¶ 1 (Thomas More Society "has threatened to file, is presently coordinating with others to file, and has improperly initiated court proceedings to obtain information to be used in lawsuits against Plaintiffs . . ."); ¶ 32 (Thomas More Society has "publicly threatened litigation"); ¶ 47 ("Plaintiffs are presently being targeted by [Thomas More Society] for lawsuits under SB8"), the Thomas More Society has not pursued SB8 litigation against plaintiffs. There are also no allegations that the Thomas More Society has participated in any other SB8 litigation against plaintiffs.

In a footnote in their brief, plaintiffs state that "a favorable decision in this case may also provide some protection for Plaintiffs in its precedential and persuasive value." [28] at 19 n.7. While plaintiffs acknowledge that this is "immaterial" to their standing, this footnote suggests that plaintiffs' injuries can be redressed because at least some private parties not before this court will heed this court's judgment. That point is unpersuasive. "Remedies . . . ordinarily 'operate with respect to specific parties.'" *California*, 141 S. Ct. at 2115 (quoting *Murphy v. Nat'l Coll. Athletic Ass'n*, 138 S. Ct. 1461, 1486 (2018) (Thomas, J., concurring)). Thus, any pronouncement from this court regarding SB8's constitutionality would have no effect on parties not bound by this court's judgment. *See Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 535 (2021); *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1][d], p. 134–26 (3d ed. 2011))); *Massachusetts v. Mellon*, 262 U.S. 477, 488

7

(1923) ("If a case for preventive relief be presented, the court enjoins, in effect, not the execution of the statute, but the acts of the official, the statute notwithstanding."). For these reasons, plaintiffs' request for injunctive relief likely will not redress their injuries.

In short, plaintiffs do not adequately explain how enjoining the Thomas More Society will redress their injuries. *See Steel Co.*, 523 U.S. at 107 ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement."). Attorneys affiliated with the Thomas More Society served as counsel in Weldon and Maxwell's Rule 202 proceedings. Weldon and Maxwell are not parties in this lawsuit, and the court cannot enjoin them or any other party not before the court. *See Whole Woman's Health*, 142 S. Ct. at 535. Notwithstanding any injunctive relief the court could issue restraining the Thomas More Society, Weldon and Maxwell would be free to continue SB8 litigation against plaintiffs in Texas.

Without plaintiffs' claim for injunctive relief, this court lacks jurisdiction to consider plaintiffs' request for a declaratory judgment. As the Supreme Court recently reiterated, "[t]he Declaratory Judgment Act, 28 U.S.C. § 2201, alone does not provide a court with jurisdiction." *California*, 141 S. Ct. at 2115. "[J]ust like suits for every other type of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy requirement." *Id.* "At a minimum, this means that the dispute must 'be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* at 2115–16 (quoting *MedImmune Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27 (2007)). Accordingly, a declaratory judgment (including injunctive relief amounting to no more than a declaration that a statutory provision is unconstitutional) "is the very kind of relief that cannot alone supply jurisdiction otherwise absent." *Id.* at 2116. Otherwise, federal courts would be able to issue "what would amount to 'an advisory opinion without the possibility of any judicial relief.'" *Id.* (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 129 (Marshall, J., dissenting)).

In sum, plaintiffs fail to show that their injuries are likely to be redressed by an injunction against the Thomas More Society. Without this basis for relief, this court lacks jurisdiction to consider plaintiffs' request for a declaratory judgment. Plaintiffs have therefore failed to show that they have standing to bring this lawsuit.

### III

Even if the court were to assume that plaintiffs' injuries were traceable to defendants' conduct and would likely be redressed by a favorable decision, any controversy between the parties is now moot. *See Arizonans for Off. English v.*

*Arizona*, 520 U.S. 43, 66–67 (1997) (a court may assume without deciding that standing exists to analyze mootness).

"Federal jurisdiction requires that a party have a 'personal stake' in the litigation's outcome." *United States v. Shorter*, 27 F.4th 572, 575 (7th Cir. 2022) (per curiam). If, at some point, "an intervening circumstance removes that personal stake, a court must dismiss the case as moot." *Id.* (citing *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013)).) A party does not have a personal stake in the case "when the court cannot fashion any relief that would have a meaningful impact on that party." *Id.*; *see Watkins v. U.S. Dist. Ct. for the Cent. Dist. of Ill.*, 37 F.4th 453, 457 (7th Cir. 2022) ("A case is moot 'only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013))). Additionally, "a potential injury that is 'too speculative cannot serve as the source of a party's interest in a case.'" *Watkins*, 37 F.4th at 457 (quoting *Shorter*, 27 F.4th at 575).

This court cannot fashion any relief that would have a meaningful impact on plaintiffs. The Thomas More Society no longer represents Weldon or Maxwell in their Rule 202 proceedings. The President of the Thomas More Society has stated, under penalty of perjury, that the Thomas More Society has no intention of enforcing or representing parties seeking to enforce SB8 against plaintiffs. [23-5] ¶¶ 5–8 ("There is no conceivable scenario in which Thomas More Society would provide legal representation to a client who sues the North Texas Equal Access Fund or the Lilith Fund for Reproductive Equity, either before or after the Supreme Court overrules *Roe v. Wade*."). Also, both Weldon and Maxwell swore in their declarations that they will continue their Rule 202 proceedings against plaintiffs regardless of whether this court issues an injunction against the Thomas More Society. *See* [23-6] ¶ 11; [23-7] ¶ 11. Plaintiffs thus lack a personal stake in this case. Therefore, there is "no live controversy between the parties on the merits of the underlying claim[s]," and the case is moot. *Breneisen v. Motorola, Inc.*, 656 F.3d 701, 706 (7th Cir. 2011).

Plaintiffs make two additional arguments related to mootness. First, plaintiffs argue that the court should determine that their "challenge is not moot and is otherwise justiciable" under the "so-called voluntary cessation exception to mootness." *Ciarpaglini v. Norwood*, 817 F.3d 541, 544 (7th Cir. 2016); [28] at 20–23. Second, plaintiffs argue that, at a minimum, the court should permit them to take limited discovery of the jurisdictional facts. [28] at 25–26.

## A

Under the voluntary cessation doctrine, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC)*,

*Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). The standard for determining whether a case has been mooted by the defendant's voluntary cessation of the complained-of conduct is "stringent." *Id.* Voluntary cessation does not moot a conflict unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)). The burden of proving that the challenged conduct cannot reasonably be expected to recur lies with the party asserting mootness. *Id.*

The voluntary cessation doctrine does not apply in this case for two reasons. First, the record indicates that the controversy became moot when Weldon and Maxwell terminated the Thomas More Society's representation in their Rule 202 proceedings. In other words, on this record, the Thomas More Society did not voluntarily change its actions as a means of mooting the case. Both Weldon and Maxwell declared, under penalty of perjury, that (1) they terminated the Thomas More Society as counsel on April 5 and April 6, 2022, respectively; (2) they alone made their decisions to terminate the Thomas More Society, and (3) they would not retain the Thomas More Society or its attorneys in "any future litigation or legal matter." [23-6] ¶¶ 5–7; [23-7] ¶¶ 5–7. Based on these sworn statements, the voluntary cessation doctrine does not apply.

Plaintiffs argue that the relevant portions of the record are untrustworthy. In a footnote, plaintiffs suggest that because Weldon and Maxwell used identical letters to terminate the Thomas More Society's representation, it is likely that either the Thomas More Society or its co-counsel prompted the decision. [28] at 21 n.8. It is unlikely, they argue, that Weldon and Maxwell independently "made the exact same decision to terminate [the Thomas More Society] and wrote the exact same letter to the exact same person with the exact same typo on consecutive days about two weeks after" the Thomas More Society was served with this lawsuit. *Id.* Plaintiffs' arguments are well taken. The timing and similarity of these letters indicate that the termination decisions were not coincidence. However, these facts do not show that the Thomas More Society had a role in coordinating or prompting the decisions. For example, on these facts it is just as likely that Weldon and Maxwell coordinated, or at least were contemporaneously aware, of one another's termination decisions. These facts also do not undermine Weldon or Maxwell's sworn statements. Taking all the record evidence together, the Thomas More Society has adequately demonstrated that it did not voluntarily moot the case.

Plaintiffs also question why, if the Thomas More Society was terminated on April 5 and 6, 2022, it took its attorneys until April 30, 2022, to withdraw from the Rule 202 proceedings. However, plaintiffs do not explain how the gap in time between the termination and the filing of the motion to withdraw belies the Thomas More Society's lack of intent to continue pursuing SB8 litigation against plaintiffs, or its lack of intent to represent parties in future litigation. Nor does it seem

10

significant that there was a gap in time between the date of termination and the filing of the motions to withdraw. In any event, the Weldon and Maxwell declarations make "absolutely clear" that the Thomas More Society did not voluntarily terminate its representation in the Rule 202 proceedings.

Second, the doctrine of voluntary cessation does not apply here because the sworn declarations submitted by the Thomas More Society make "absolutely clear" that the Thomas More Society cannot reasonably be expected to engage in future SB8 litigation against plaintiffs. Brejcha stated under penalty of perjury that the Thomas More Society would never serve as the plaintiff in a civil enforcement lawsuit under SB8, and that it has no intention of representing other individuals who seek to sue plaintiffs (or file Rule 202 petitions against plaintiffs) for violating SB8. [23-5] ¶¶ 6–8, 17. Specifically, Brejcha stated that the Thomas More Society has no intention and has never had any intention of suing plaintiffs for violating SB8. *Id.* ¶ 6. Brejcha further stated that the Thomas More Society would never serve as a plaintiff in a private civil enforcement suit under SB8 because the Thomas More Society is not a Texas resident or citizen and could not take advantage of SB8's favorable venue rules. *Id.* In relevant part, Brejcha swore:

> Thomas More Society has no interest in suing the North Texas Equal Access Fund or the Lilith Fund for Reproductive Equity under SB 8 because we are expecting the Supreme Court to overrule *Roe v. Wade*, 410 U.S. 113 (1973), when it announces its ruling in *Dobbs v. Jackson Women's Health Organization*, No. 19-1392, which will immediately criminalize abortion throughout the state of Texas and eliminate any need to enforce the state's abortion laws through private civil lawsuits. And I will not allow Thomas More Society to represent plaintiffs who file private civil-enforcement lawsuits under SB 8 before the Supreme Court overrules *Roe v. Wade*, because lawsuits of that sort could provide the state judiciary and subsequent appellate courts with an opportunity to pronounce the statute unconstitutional under *Roe*. There is no conceivable scenario in which Thomas More Society would provide legal representation to a client who sues the North Texas Equal Access Fund or the Lilith Fund for Reproductive Equity, either before or after the Supreme Court overrules *Roe v. Wade*.

*Id.* ¶ 8.

Brejcha's statement, made under penalty of perjury, that "[t]here is no conceivable scenario in which Thomas More Society" would represent anyone suing plaintiffs for violating SB8 makes absolutely clear that the challenged conduct cannot reasonably be expected to recur. The penalty for perjury is severe and can include sanctions and criminal prosecution. *See Nisenbaum v. Milwaukee County*, 333 F.3d 804, 810 (7th Cir. 2003). And the fact that Brejcha's sworn declaration is

11

"self-serving" is not enough to distrust it. *See Hill v. Tangerlini*, 724 F.3d 965, 967 (7th Cir. 2013) ("Deposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving. . . . As we have repeatedly emphasized over the past decade, the term 'self[-]serving' must not be used to denigrate perfectly admissible evidence." (internal citation omitted)). Plaintiffs have not presented a compelling reason to distrust Brejcha's sworn declaration. The Thomas More Society has therefore met its burden of proving that the challenged conduct cannot reasonably be expected to recur.

For these reasons, any controversy between the parties is moot, and the voluntary cessation exception does not apply.[4]

**B**

In the alternative, plaintiffs request that they be permitted to take limited discovery of the jurisdictional facts.

This court "has authority 'to require a defendant to respond to discovery requests relevant to his or her motion to dismiss for lack of jurisdiction.'" *Zurich Am. Ins. Co. v. Tangiers Int'l LLC*, No. 18-cv-2115, 2018 WL 3770085, at *2 (N.D. Ill. Aug. 9, 2018) (quoting *Mart v. Berkshire Hathaway Inc.*, No. 10-cv-118, 2010 WL 11575057, at *2 (N.D. Ind. Aug. 2, 2010)). However, plaintiffs do "not enjoy an automatic right to jurisdictional discovery in every case." *Id.* (quoting *Mart*, 2010 WL 11575057, at *2). Instead, plaintiffs "must make a *prima facie* showing with some competent evidence demonstrating that jurisdiction might exist in order to be entitled to jurisdictional discovery." *Id.* (quoting *Regency Com. Assocs. LLC v. Action 49 Junction I, LLC*, No. 17-cv-143, 2017 WL 5287168, at *3 (S.D. Ind. Nov. 13, 2017)). "Generally, courts grant jurisdictional discovery if the plaintiff can show that the factual record is at least ambiguous or unclear on the jurisdiction issue." *Id.* (quoting *Ticketreserve, Inc. v. viagogo, Inc.*, 656 F. Supp. 2d 775, 782 (N.D. Ill. 2009)). Plaintiffs may not, however, "rely on bare, attenuated, or unsupported assertions of jurisdiction to justify discovery." *Id.* (cleaned up).

Plaintiffs do not adequately explain the specific discovery they would take or how taking discovery would aid them in establishing any of the jurisdictional facts, in particular, on the issue of redressability. *See John Crane Inc. v. Simon*

---

[4] Plaintiffs also argue that this case is not moot under "the public interest doctrine." However, there is no "public interest doctrine" exception to mootness, and the cases plaintiffs cite do not establish that the Supreme Court or the Seventh Circuit has ever recognized such an exception to mootness. *See* 13C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3533.9 (3d ed. 2023) ("Although a few cases come tantalizingly close to recognizing a 'public interest' exception to individual mootness, the exception has not yet been achieved.").

*Greenstone Panatier Bartlett, APC*, No. 16-cv-05918, 2017 WL 1093150, at *13 (N.D. Ill. Mar. 23, 2017) ("In addition, in Plaintiff's one sentence request for discovery, it does not articulate what discovery it seeks, why such discovery is necessary, or how such discovery could advance its arguments."); *Leibovitch v. Islamic Republic of Iran*, 188 F. Supp. 3d 734, 760 n.18 (N.D. Ill. 2016) (rejecting plaintiffs' request for discovery on personal jurisdiction where plaintiffs failed to "outlin[e] why it is needed or what limited discovery requests they would make").  Plaintiffs also state that, to the extent this court rejects their contention that the voluntary cessation doctrine applies, they be permitted to conduct limited discovery to examine the veracity of the sworn declarations the Thomas More Society submitted.  However, plaintiffs have not presented a compelling reason to think that the sworn declarations are untrustworthy or that they contain false statements.  The record is not ambiguous or unclear on the jurisdictional issues.  Accordingly, the plaintiffs' request to take limited discovery is denied.

## IV

The motion to dismiss [23] is granted for lack of jurisdiction.  If plaintiffs believe they can amend their complaint in compliance with this order and Federal Rule of Civil Procedure 11, they may file an amended complaint by April 30, 2024.

March 31, 2024                                                     /s/ Martha M. Pacold

13